## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

U S WEST COMMUNICATIONS, INC.,
a Colorado Corporation,

       Plaintiff,

      -vs-                                       No. CIV 97-0539 JC/WWD

ERIC SERNA, JEROME BLOCK, and
GLORIA TRISTANI, Commissioners of the
New Mexico State Corporation Commission; and
AT&T COMMUNICATIONS OF THE MOUNTAIN
STATES, INC., a New York Corporation,

       Defendants,

     -and-

UNITED STATES OF AMERICA, and
FEDERAL COMMUNICATIONS COMMISSION,

       Intervenors.

## **MEMORANDUM OPINION**

THIS MATTER came on for consideration of several pending motions.  In addition to reviewing the relevant authorities, the Court has examined the entire case file and all of the motions and memoranda submitted by the parties and intervenors.  The Court finds that at this time it lacks jurisdiction over the claims brought pursuant to the Telecommunications Act of 1996, and those claims will be dismissed without prejudice.  As to the constitutional claims brought in Counts 11, 14 and 15, the Court has federal question jurisdiction as to that portion of the arbitration order mandating that Plaintiff disclose information regarding its dark fiber even in the absence of an

approved interconnection agreement.  With the exception of the § 1983 claim regarding the dark fiber disclosure requirement, all other constitutional claims (including those asserting First Amendment violations) are not yet ripe for review and will be dismissed without prejudice.  The Court further finds that it will exercise its federal question jurisdiction over the only ripe constitutional claim and will grant Plaintiff's Motion to Stay that portion of the commission's order requiring U S West to precisely disclose the locations and quantity of its dark fiber even in the absence of approval or rejection of an interconnection agreement.

## **Background**

In an effort to foster competition in the telecommunications industry, Congress passed the Telecommunications Act of 1996 ("the Act")[1] which became effective February 8, 1996.  GTE South, Inc. v. Morrison, 957 F. Supp. 800  (E.D. Va.1997).  New  competitors are permitted under the Act to enter local service markets by purchasing services and connecting to facilities owned by "incumbent" telephone companies, such as Plaintiff U S WEST within the State of New Mexico.  The Act requires that present telecommunication providers negotiate agreements to allow any competing carrier:  to interconnect to its facilities,   § 251(c)(2); to obtain "unbundled" elements of its telecommunications network, § 251(c)(3); and to purchase retail telecommunications services at wholesale prices, § 251(c)(4).  47 U.S.C. § 252.

If the new competitor and incumbent provider fail to voluntarily reach an agreement for the provision of such services within 135 to 160 days, either party may petition a State commission to arbitrate any open issues.  47 U.S.C. § 252(b)(1).  The procedures associated with this arbitration

---

[1]  Pub. L. No. 104, 110 Stat. 56 (1996), codified at scattered sections of Title 47 of the United States Code. The specific provisions of the Act presently at issue include 47 U.S.C. § 251 and § 252.

process are outlined in § 252 of the Act.  If the State commission "fails to act to carry out its responsibility in any proceeding or other matter" under this section, the FCC is to issue an order preempting the State commission's jurisdiction and is to assume the responsibility.  47 U.S.C. § 252(e)(5).  In such a case, "the proceeding before the Commission . . . and any judicial review of the Commission's actions shall be the exclusive remedies for a State commission's failure to act." 47 U.S.C. § 252(e)(6).

Here, however, the New Mexico State Corporation Commission accepted the arbitration responsibility and received written and live testimony from twenty-six witnesses during February 13 through February 21, 1997.  The following month, the commission issued Findings of Fact, Conclusions of Law and Order ("the March 20, 1997 Order")[2] detailing the terms to be incorporated into an interconnection agreement between Plaintiff U S WEST and Defendant AT&T.  The March 20, 1997 order further imposed on U S WEST a duty to disclose to AT&T within forty-five days specific information regarding a type of unused fiber optic cable.

To date, a final interconnection agreement between these telecommunication companies has not been filed for the commission's final approval or rejection as required by § 252(e).  Instead, the commission has before it a joint request by the companies for the commission to resolve certain contract issues for inclusion in the final interconnection agreement to be submitted for commission approval.

---

[2]   The document was 72 single-spaced pages in length and set forth over four hundred individual findings of fact.  Errata notices were issued by the commission on April 1 and 4, 1997.

## Analysis

### Jurisdiction under the Telecommunication Act of 1996

U S WEST filed this action for declaratory and injunctive relief  from the commission's March 20, 1997 arbitration order.  Plaintiff contends that jurisdiction lies in this Court to review the entire commission's order pursuant to § 252(e)(6), which provides as follows:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the ***agreement*** or statement[3] meets the requirements of section 251 of this title and this section.

Although it concedes that no final interconnection agreement has been approved or rejected by the commission, U S WEST maintains that it is aggrieved by the commission's determinations in the March 20, 1997 order and by the form of interconnection agreement that the order directs the companies to submit for its approval.  In short, Plaintiff contends that "the formal act of approval is not a requirement of jurisdiction, ripeness, or declaratory relief in a case such as this one . . . ."  Plaintiff's Response to AT&T's Motion to Dismiss at 7.

I have been unable to locate any court decision that has accepted such a proposition.  Rather, it appears that every court addressing this issue has found that the Act limits the federal court's jurisdiction to reviewing an approved or rejected interconnection agreement to determine if it complies with the requirements of § 251.  See GTE Southwest Inc. v. Graves, No. CIV-97-0078-C (W.D. Okla. June 5, 1997); GTE North, Inc. v. Strand, No. 5:97-0078-C (W.D. Mich. June 2, 1997); Contel of Minn., Inc., d/b/a GTE of Minn. v. Jacobs, Nos. 97-169, 97-366 (D. Minn. May 30, 1997); GTE Midwest Inc. v. Zobrist, No. 96-1313-CV-C-5 (W.D.Mo. May 22, 1997); GTE North v.

---

[3]  The term "statement" refers to a "statement of generally available terms" that a "Bell operating company may prepare."  § 252(f)(1).  No such "statement" is at issue in this litigation.

Glazer, No. 5:97-CV-137 (N.D. Ohio May 12, 1997); GTE Florida Inc. v. Johnson, 964 F. Supp. 333

(N.D. Fla. May 11, 1997); GTE South, Inc. v. Breathitt, 963 F. Supp. 610 (E.D.Ky. Apr. 25, 1997);

GTE Northwest v. Hamilton, No. 97-6021 (D. Ore. Apr. 16, 1997); GTE Northwest v. Nelson,

No. 96-1991 (W.D. Wash. Mar. 31, 1997);  GTE Southwest v. Wood, No. M-97-003 (S.D. Tex.

Mar. 27, 1997); GTE South Inc. v. Morrison, 957 F. Supp. 800 (E.D. Va. Feb 24, 1997).

The Morrison opinion cited above presents a thoughtful and careful analysis which persuades

this Court that the structure of the statute supports the view that judicial review of the commission's

order is premature prior to the approval process.

Section 252 sets out a four-stage approach to developing an interconnection agreement:

*First*, voluntary negotiations for the first 135 days, § 252(a);

*Second*, arbitration of the unresolved issues commencing during the 135th to 160th day and concluded by the State commission within nine months of the first interconnection agreement request, § 252(b);

*Third*, approval or rejection by the State commission, § 252(e)(1)-(4); and

*Fourth*, review of State commission actions, § 252(e)(6).

The SCC has not completed the third step in the statutory procedures because the parties have not submitted an agreement.  The accelerated timetables and paragraph structure within § 252 require the completion of SCC action prior to district court review so as not to 'disrupt[ ] the review scheme Congress intended.'

Morrison, 957 F. Supp. at 804-05 (quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200,

206 (1994)).

As AT&T points out, even after the commission makes a determination on an arbitrated issue,

the Act requires the commission to evaluate the submitted interconnection agreement and "approve

or reject the agreement, with written findings as to any deficiencies."  § 252(e)(1).  Prior to judicial

review, the commission must be given the opportunity to review the telecommunications companies'

interpretation of the commission's rulings as incorporated into the agreement, to assure itself that the

arbitrated determinations are functional within the context of a complete interconnection agreement,

and to make a final determination that the submitted agreement conforms to the requirements of the

Act and to the dictates of State law as well.

Thus, I find that the Act does not permit federal review over the claims which allege only

violations of the Act until such time as the interconnection agreement has been approved or rejected.

"A finding that Congress intended to preclude review 'prevents a district court from exercising

subject-matter jurisdiction.'"  Morrison , 957 F. Supp. at 804 (E.D.Va. 1997) (quoting Thunder

Basin, 510 U.S. at 202 (1994)).  Therefore, Counts 1 through10, 12 and 13 will be dismissed without

prejudice.

### Asserted Alternative Grounds for Jurisdiction

Plaintiff argues that the three remaining claims provide this Court with alternative grounds

for federal question jurisdiction.   Brought pursuant to 42 U.S.C. § 1983, Counts 11, 14 and 15

include allegations that the commission's actions violate U S WEST's constitutional guarantees to

due process and unauthorized takings.  Yet, U S WEST is under **no duty** to perform the terms of the

arbitrated interconnection agreement until such time that the commission finally approves such an

agreement.  Thus, alleged constitutional violations will ripen only at completion of the interconnection

agreement approval process when Plaintiff would be obligated to perform under such agreement.

These unripe constitutional claims will be dismissed without prejudice.

A problematic exception lies in paragraph 3 on page 71 of the commission's order of

March 20, 1997:

***3.  U S WEST shall provide to AT&T, within 45 days of the effective date of this Order, with maps and other data sufficient to indicate the precise location and currently unused extent of capacity of U S WEST's dark fiber[4] in New Mexico.***

Unlike the other portions of the commission's arbitration order, this disclosure requirement is not dependent on completion of the approval process.  The order to disclose represents an actual and concrete harm to Plaintiff's asserted interest in excluding potential competitors from "proprietary and competitively sensitive information" regarding its dark fiber.  Because the commission denied U S WEST's motion for reconsideration, Plaintiff can now be accountable for failure to comply with this portion of the order.  Thus, unlike the other alleged constitutional violations, this disclosure requirement is ripe for review.

## Applicability of the Johnson Act

But in which forum is review of this "final" portion of the order to take place?  Plaintiff contends that by its terms, the Telecommunication Act of 1996 precludes the State from providing judicial review of this "final" decision.  Indeed, the Act provides that "no State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement . . . ."  47 U.S.C. § 252(e)(4).  Thus, Plaintiff argues that it has no recourse other than to seek an injunction in federal court to prohibit enforcement of the disclosure requirement on constitutional grounds.

However, with its passage of the Johnson Act in 1934, Congress specifically limited federal jurisdiction over even constitutional claims affecting utility rate orders.  The Johnson Act, 28 U.S.C. § 1342, provides as follows:

---

[4]  The term "dark fiber" refers to "the fiber installed under a cable sheath that is not currently connected to the electronics that make it functional."  Because this cable has been "unlit," the dark fiber is akin to an unused inventory for potential later use in telecommunications.

The district courts shall not enjoin, suspend or restrain operation of, or compliance with, any order affecting the rates chargeable by a public utility and made by a State administrative agency or a ratemaking body of a State political subdivision where:

    (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
    (2) The order does not interfere with interstate commerce; and,
    (3) The order has been made after reasonable notice and hearing; and
    (4) A plain, speedy and efficient remedy may be had in the courts of such State.

Defendants contend that the Johnson Act precludes this Court from addressing Plaintiff's constitutional challenges of the commission's arbitration order because it constitutes "an order affecting rates."

The Tenth Circuit has given the phrase "an order affecting rates" an expansive interpretation given the history of the Johnson Act. See Tennyson v. Gas Service Co., 506 F.2d 1135 (10th Cir. 1974). Tension had developed between state and federal systems in two areas: state rate-making and state tax matters.[5] The Tennyson court observed that the Johnson Act

was intended to keep constitutional challenges to orders affecting rates out of the federal courts 'lock, stock and barrel,' or, as Professor Moore succinctly puts it, to effect a 'general hands-off policy relative to state rate making.' The Act is not framed in terms of categories of plaintiffs, whether municipalities, state commissions, utilities or consumers, but in terms of enumerated conditions. Behind the Act were years of hostilities generated from jurisdiction in both the state and federal systems, removal of which was deemed desirable to the national policy. Thus the restriction imposed was far-reaching, going to jurisdiction itself.

Id. at 1138. Yet the Tenth Circuit specifically noted that the limitations on jurisdiction imposed by the Johnson Act were subject to Congressional modification. "Should it be thought desirable to

---

    [5] Similar to the Johnson Act, 28 U.S.C. § 1341 provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

-8-

resurrect the federal jurisdiction in favor of any particular class or group, ***such is a matter for the Congress, not for this court.***" Id. (emphasis added).

I believe that this is precisely what Congress intended to do with its enactment of the Telecommunications Act of 1996. Undoubtedly, the arbitration process and resulting interconnection agreements will affect, directly or indirectly, state utility rate orders. Yet, the Act expressly prohibits state court review and vests such exclusive review authority in the federal courts. It would appear by the terms of the 1996 Act that technological advancements in the telecommunications industry over the past fifty years warrant a change in national policy authorizing limited federal intrusion into the arena of traditional rate-making authority.

Congress clearly knew that interconnection agreements affect rates, yet expressly authorized federal jurisdiction to review such agreements. By "resurrecting" federal jurisdiction under § 252 of the 1996 Act, Congress rejected the "hands-off" policy underlying the Johnson Act and instead adopted a "hands-on" role for federal courts in the specific area of interconnections between telecommunications providers. The Johnson Act's purpose of eliminating federal encroachment will not be served where, as here, federal court review of a state order affecting rates has been specifically authorized by Congress. Therefore, the rationale behind the Johnson Act would not require that I dismiss the ripe constitutional claim directly arising from the interconnection agreement process.

Even if the Johnson Act were deemed applicable, however, Defendants have not demonstrated that the fourth prong for abstention under § 1342 has been satisfied.

> In order to qualify as 'plain, speedy, and efficient,' the state remedy need only meet certain minimum procedural requirements. See Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 512-514, (1981) (construing the 'plain, speedy, and efficient' state remedy requirement of the Tax Injunction Act,  28 U.S.C. § 1341, which was modeled after the identical language in the Johnson Act). To be 'plain' the state remedy must not

be uncertain or unclear.  Id. at 517.  To be 'speedy' it must not entail significantly
greater delay than a corresponding procedure in federal court.  See id. at 519-21.  To
be 'efficient' it must not require 'ineffectual activity or an unnecessary expenditure of
time or energy.'  Id. at 518.

Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1055 (9th Cir. 1991), cert. denied,

503 U.S. 938 (1992).  Defendants contend that U S WEST can take advantage of State procedures

which permit someone aggrieved  by a utility commission's decision to appeal alleged constitutional

claims to State court.  However, § 252(e)(4) of the Telecommunications Act strips State courts of

the power to review the determinations of a State commission associated with telecommunications

interconnection agreements.  Because the availability of a state remedy is neither certain nor clear,

I find that U S WEST lacks "a  plain, speedy and efficient remedy" in a State forum to address the

dark fiber disclosure requirement.

### Other Asserted Bar to Federal Jurisdiction

Defendant Commissioners contend that the Eleventh Amendment prohibits a federal

forum for claims related to the Telecommunications Act of 1996.  Because I find that the Court lacks

subject matter jurisdiction under the Act until the commission has approved or rejected an

interconnection agreement, I need not address the Eleventh Amendment arguments as to those claims

at this time.

The Eleventh Amendment does not bar the § 1983 claim seeking to enjoin the Commissioners

from enforcing the portion of the order requiring the dark fiber disclosure of information.  Historically

such claims for prospective injunctive relief have not been treated as actions against the state because

the state actor is "stripped of his official or representative character" by his unconstitutional actions.

See Ex Parte Young, 209 U.S. 123 (1908).

-10-

**Plaintiff's Objection to Denial of a Stay**

Having determined that this Court has jurisdiction over the specific § 1983 claim identified above, the objections to Chief Magistrate Judge Deaton's Order must be addressed.  The Magistrate Judge denied a motion to stay the disclosure portion of the commission's arbitration order on the basis that there had been no ruling whether the federal district court had jurisdiction over the action. Now that this issue has been decided in the affirmative, the merits of U S WEST's motion to stay, which have been fully briefed by the parties, must be addressed.

Plaintiff seeks to restrain enforcement of the disclosure requirement portion of the arbitration order until the merits of its constitutional claim can be resolved.  In order to obtain the  injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, U S WEST must demonstrate that the following four elements are met:

(1) substantial likelihood that the movant will eventually prevail on the merits:

(2) a showing that the movant will suffer irreparable injury unless the injunction issues;

(3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) a showing that the injunction, if issued, would not be adverse to the public interest.

Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980).  A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule.  GTE Corp. v. Williams, 731 F.2d 676 (10th Cir. 1984) cert. denied, GTE Corp. v. Williams, 498 U.S. 998 (1990).

In determining whether such an injunction is warranted, a court must be guided by normal equitable principles and "must weigh the practicalities of the situation."  Id. at 678.  Because it

constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established.   United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enterprise Mgt. Consul., Inc., 883 F.2d 886 (10th Cir. 1988).

The Court finds that Plaintiff has met its burden.  U S WEST's disclosure of the confidential information to its potential competitors cannot be undone; the competitive advantage gained by AT&T from obtaining the precise location and currently unused extent of capacity of U S WEST's dark fiber would be difficult, if not impossible, to calculate in terms of monetary damages.  As Plaintiff contends, "in the hands of a competitor, particularly AT&T with its competitive strength and resources, the information is a roadmap to U S WEST's customers and marketing strategies and will enable AT&T to identify and precisely target such customers."  Thus, the potential injury resulting from forced disclosure of the proprietary dark fiber information represents an irreparable, immediate harm to U S WEST.  Similarly, Plaintiff has demonstrated that:  the threatened injury to it outweighs whatever damage, such as delays in the agreement approval process, the proposed injunction may cause defendants; and the injunction, if issued, would not be adverse to the public interest.

Where, as here, the other three requirements for a preliminary injunction are satisfied, "it will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."  City of Chanute v. Kansas Gas & Elec. Co., 754 F.2d 310, 314 (10th Cir 1985) (quoting  Otero Sav. and Loan Ass'n v. Federal Reserve Bank, 665 F.2d 275, 278 (10th Cir. 1981). Again, U S WEST has shown that the questions going to the merits of its constitutional claim satisfy the test for obtaining injunctive relief at this time.

-12-

U S WEST contends that by imposing the immediate requirement to disclose proprietary information, the commissioners acted outside the scope of their authority. Under the Act, commissioners are to arbitrate and set prices for new competitors to purchase "network elements" from the incumbent provider. One of the statutorily-based claims is that the commission exceeded its authority by including dark fiber in the order on the basis that it falls outside the definition of "network element" because dark fiber is not currently being "used" in telecommunications.

The FCC has not yet advocated any position on the issue. Instead, just last year the FCC opted to

> decline at this time to address the unbundling of incumbent LECs' 'dark fiber.' Parties that address this issue do not provide us with information on whether dark fiber qualifies as a network element under sections 251(c)(3) and 251(d)(2). Therefore, we lack a sufficient record on which to decide this issue. We will continue to review and revise our rules in this area as necessary.

Federal Communications Commission's First Report and Order in the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 at ¶ 450 (1997). As discussed previously, however, the merits of this solely *statutory* claim will not ripen until the interconnection agreement is approved or rejected by the commission.

Plaintiff further contends that the commission exceeded its authority under the Act by imposing on U S WEST, ***independent of the finalization and approval of an interconnection agreement***, a very precise and detailed disclosure requirement. The commissioners are specifically directed by Congress to limit their consideration to the unresolved issues set forth in the arbitration petition and response. § 252(b)(4)(A). It is unclear if "dark fiber" was an issue raised in either the petition or response.

Assuming that it was raised in either of the documents as an unresolved issue, Defendants rely on that portion of the Act that permits a State commission to "require the petitioning party and the responding party to provide such information as may be reasonably necessary for the State commission to reach a decision on the unresolved issues."[6] § 252(b)(4)(B). Yet, the "request" in this instance constitutes a binding order of the commission and imposes a legal duty on Plaintiff to comply. The Act, however, provides that "[i]f any party refuses or fails unreasonably to respond on a timely basis to any reasonable request from the State commission, the State commission may proceed on the basis of the best information available to it from whatever source derived." Id. Thus, Plaintiff argues that the entry of such a binding disclosure order was outside the commission's subject matter jurisdiction.

The commission denied the stay now sought on the basis that U S WEST had waived its right to protest the disclosure requirement. However, lack of subject matter jurisdiction represents a defect which cannot be waived and can be raised at any time. Penteco Corp. v. Union Gas Sys., 929 F.2d 1519, 1521 (10th Cir. 1991). I find that Plaintiff has sufficiently raised questions going to lack of subject matter jurisdiction in the commission's order requiring specific, confidential disclosures that the stay is warranted to preserve a meaningful opportunity to litigate the issue on the merits. In an effort to minimize delays to the commission proceedings, Chief Magistrate Judge Deaton will be requested to contact all counsel and obtain an expedited discovery/briefing schedule on the very

---

[6] "Incumbent LECs have a duty to make available to requesting carriers general information indicating the location and technical characteristics of incumbent LEC network facilities. Without access to such information, competing carriers would be unable to make rational network deployment decisions and could be forced to make inefficient use of their own and incumbent LEC facilities, with anticompetitive effects." Federal Communications Commission's First Report and Order in the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 at ¶ 205 (1997).

narrow issue on which the stay is granted--whether the commissioners exceed their scope of authority under the Act by imposing the detailed disclosure requirement independent of the approval or rejection of an interconnection agreement.

An order in accordance with this opinion shall be entered.

**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for U S WEST:    Bruce L. Herr
Victor R. Ortega
Thomas W. Olson
Montgomery & Andrews, P. A.
Santa Fe, New Mexico

James H. Gallegos
U S WEST, Inc.
Denver, Colorado

Counsel for Commissioners:    David M. Kaufman
Deborah Dorman-Rodriguez
Attorney General's Office
State of New Mexico
Santa Fe, New Mexico

Counsel for AT&T:    Maria Arias Chapleau
Rebecca D. DeCook
Michael Singer
Denver, Colorado

Steven Asher
Peter J. Gould
Santa Fe, New Mexico

Counsel for Intervenors:    Raymond Hamilton
Assistant U.S. Attorney
U. S. Attorney's Office
District of New Mexico
Albuquerque, New Mexico

-15-